**LIONEL E. CYNTJE, Plaintiff**

v.

**HENRITA TODMAN, Supervisor of Elections of the Virgin Islands, Defendant**

Civil No. 82-234

District Court of the Virgin Islands

Div. of St. Thomas and St. John

October 4, 1982

LIONEL E. CYNTJE, St. Thomas, V.I., *pro se*

J'ADA FINCH–SHEEN, ESQ., Attorney General (Department of Law), St. Thomas, V.I., *for defendant*

CHRISTIAN, *Chief Judge*

## MEMORANDUM AND ORDER

Plaintiff Lionel E. Cyntje challenges certain provisions of the Virgin Islands elections law as being violative of the Equal Protection clause of the Fourteenth Amendment to the Constitution. Specifically, he requests that the Court strike down 18 V.I.C. § 381(b) which requires that a candidate for any territory-wide office obtain the signatures of "at least 50 qualified electors of each of at least two election districts" as a prerequisite for having his or her name placed on the general election ballot. In addition, plaintiff seeks to

immediately enjoin the respondent Supervisor of Elections from disqualifying him from a place on the ballot for his failure to have complied with the challenged statute. Treating the present pro se petition as an inartfully drafted application for a temporary restraining order, Fed. R. Civ. P. 65(b), we will deny the requested relief and dismiss the complaint.

Plaintiff seeks to have his name printed on the ballot as an independent candidate for both the office of Governor and the office of Lieutenant Governor[1] in this year's general election. He alleges that although he has obtained the required fifty signatures from the election district of St. Thomas-St. John, he is unable, for financial reasons, to "travel to and board in the [election] district of St. Croix to have [Section 381(b) requires] his petitions signed by fifty . . . voters from that district. . . ." It is for this reason, argues plaintiff, that the geographic distribution requirement for nomination petitions contained in § 381(b) denies him equal protection of the law.

■■■ It has been established that the state may not "utilize[] the criterion of ability to pay as a condition to being on the ballot. . . ." Bullock v. Carter, 405 U.S. 134, 149 (1972). However, the statute challenged herein imposes no such burden on those seeking elective office. Requiring a candidate for Governor of the Virgin Islands to demonstrate a minimum amount of inter-island support does not thereby require him to shoulder any direct financial obligations. Nothing in the statute can be read as requiring a candidate for territory-wide office to personally travel from the election district where he resides to the second district. Indeed, the relatively small number of signatures required from the second district can be obtained at minimal cost through the use of designated agents, the mails or both.

■■■ Whatever minor and indirect financial impact § 381(b) might have upon candidates is moreover clearly outweighed by the recognized interest of the Government "in requiring some preliminary showing of a significant modicum of support before printing the name of a . . . candidate on the ballot." Jenness v. Fortson, 403

---

[1] Even if plaintiff's challenge to the statutory signature requirement were deemed meritorious, the defendant Supervisor would still have been authorized to deny certification at least to those petitions submitted in support of one of the two-ballot positions which plaintiff seeks. Section 11 of the Revised Organic Act of 1954, 48 U.S.C. § 1541, § 1591, makes clear that the Office of Governor and Office of Lieutenant Governor are separate positions, each to be filled by a different individual. (Indeed § 13 provides that in case of temporary or permanent vacancy in the Office of the Governor, the Lieutenant Governor shall become Governor.)

U.S. 431, 442 (1971). "Not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review." Bullock v. Carter, supra at 143. Thus various statutes which set forth the minimum number of petition signatures required for access to the ballot have withstood Constitutional attack, see e.g., Jenness v. Fortson, supra; Greaves v. Mills, 497 F.Supp. 283 (E.D. Ky. 1980), as have statutes, such as the one in question, which engraft a reasonable geographical distribution requirement onto a minimum signature provision. See, Udall v. Bowen, 419 F.Supp. 746 (S.D. Ind. 1976) (three judge court), aff'd mem., 425 U.S. 947 (1976); Morritt v. Governor of New York, 397 N.Y.S.2d 929, 366 N.E.2d 1285 (N.Y. 1977), appeal dismissed, 434 U.S. 1029 (1978). So long as the contemplated election districts are nearly equal in overall population, a requirement that signatories to a nomination petition be equally distributed among those districts is not so discriminatory or so unreasonably restrictive as to violate Constitutional guarantees.[2]

■ For the foregoing reasons the application of plaintiff for injunctive relief will be denied and the complaint dismissed for failure to state a cognizable legal claim.

## ORDER

The premises considered and the Court being full advised,

IT IS ORDERED that the application of plaintiff for a temporary restraining order be, and the same is hereby, DENIED;

IT IS FURTHER ORDERED that the complaint of plaintiff be, and the same is hereby, DISMISSED.

---

[2] In Morritt, supra, the New York Court of Appeals upheld a statute which required a candidate, as a prerequisite to having his name placed on the statewide primary ballot, to obtain 100 signatures of a required 20,000 signatures, from each of one half of the state's congressional districts. The Court explained the state's legitimate interest in such a statute as follows:

[T]he geographical distribution requirement serves to preclude a concentration of [voters] in one area of the State that may, solely for petition purposes, exercise exclusive control over the nominating process. The challenged statute is thus a permissible method of preventing manipulation of the ballot by superficial petition signing. The statute guarantees that those seeking State-wide office have some minimal measure of broad based numerical and geographical support and imposed no excessively prohibitive burden on a candidate seeking a position on the . . . ballot.

Id., 366 N.E.2d at 1287.